UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| BIOSONIX, LLC, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 4:16-cv-139-RC |
| ) | |
| v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| ) | |
| HYDROWAVE, LLC, ) | |
| RHP INDUSTRIES, LLC, and ) | |
| T-H MARINE SUPPLIES, INC., ) | |
| ) | |
| Defendants. ) | |

### PLAINTIFF BIOSONIX, LLC's RESPONSE TO T-H MARINE SUPPLIES, INC.'S PARTIAL MOTION TO DISMISS BIOSONIX'S FIRST AMENDED COMPLAINT

Biosonix, LLC ("Biosonix") hereby responds to Defendant T-H Marine Marine Supplies, Inc.'s (T-H Marine) Partial Motion to Dismiss Biosonix's First Amended Complaint. In its motion, T-H Marine argues that Biosonix's fails to state a claim of direct infringement by T-H Marine of claim 13 of U.S. Patent No. 7,333,395 (the "'395 Patent") and claims of induced infringement, contributory infringement and willful infringement by T-H Marine. For the reasons discussed below, T-H Marine Marine's motion should be denied.

### I. MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)

A claim is sufficient under Fed. R. Civ. P. 12(b)(6) if the allegations are sufficient to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The court assumes that the well-pleaded facts are true and views those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen,* 681 F.3d 215, 218 (5th Cir. 2012). In analyzing the

complaint, the court should disregard conclusory allegations and determine if the allegations "plausibly suggest an entitlement to relief". *Iqbal*, 556 U.S. at 664, 681. The court may consider the allegations in the complaint, the exhibits attached thereto and may also consider matters of which it may take judicial notice. *McArdle v. Mattel Inc.,* 456 F.Supp.2d 769, 777 (E.D. Tex. 2006). Matters of public record, exhibits attached to the complaint and items appearing in the record of the case may also be considered. *Id.* The determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679. According to these standards, Biosonix has stated claims for relief against all defendants for direct infringement of claim 13, indirect infringement and willful infringement.

## II.    ARGUMENT

### A.    Biosonix has Sufficiently Stated a Claim of Direct Infringement of Claim 13 under 35 U.S.C. §271(a) Against All Defendants

A method claim may be infringed when all steps of the claim are performed by or attributable to a single entity. *Akamai Techs., Inc. v. Limelight Networks, Inc.* 97 F.3d 1020, 1022 (Fed. Cir. 2015)(en banc). Biosonix's allegations are more than sufficient to state a claim for direct infringement of claim 13 of the '395 Patent. T-H Marine misstates Biosonix's allegations. T-H Marine represents that Biosonix alleges that Defendants only sell the accused product, the H2 system. To the contrary, Biosonix alleges that all Defendants have manufactured the H2 system. [Dkt. # 11, ¶ 25]. In addition, Biosonix alleges that Defendants use the H2 system. [Dkt. # 11, ¶49]. This use of the H2 system includes T-H Marine and Hydrowave practicing the steps of claim 13.

Common sense dictates that as the manufacturer of the H2 system, T-H Marine (like Hydrowave and RHP) has used the H2 System to test and evaluate the product. In Exhibit B to its motion, T-H Marine provides a press release regarding T-H Marine's acquisition of Hydrowave,

PLAINTIFF BIOSONIX, LLC's RESPONSE TO
T-H MARINE SUPPLIES, INC.'S PARTIAL MOTION TO DISMISS -  P. 2

of which T-H Marine asks the Court to take judicial notice. In the November 2015 press release, T-H Marine President Jeff Huntley states that Hydrowave's employees will be relocated to T-H Marine's headquarters in Huntsville, Alabama where assembly of the H2 system will occur. [Dkt. # 21, Exh. B, p. 3]. Huntley stated further that "[w]ithin one week of this closing, HydroWave will be fully functioning as a brand at T-H Marine Marine." *Id.* In essence, T-H Marine argues that although it has assumed full operations of Hydrowave as the manufacturer, assembler, distributor and seller of the H2 System and will further develop the product, it maintains *no* quality control over the product and *never* uses it. This defies common sense. The allegations of manufacture and use in the complaint include use by all defendants of the H2 System in the course of manufacturing and testing in a manner that directly infringes claims 4 and 13.

Viewing the facts in the light most favorable to the plaintiff, Biosonix has certainly stated a claim for relief that is plausible on its face and provides more than sufficient notice of direct infringement of claim 13 by all defendants, including T-H Marine. As such, T-H Marine's motion to dismiss the claim of direct infringement of claim 13 of the '395 Patent should be denied.

    B.  **Biosonix Has Stated Claims of Indirect Infringement and Willfulness**

T-H Marine argues that Biosonix has failed to state a claim for indirect infringement of the '395 Patent. A claim of induced infringement under 35 U.S.C. 271(b) requires proof of a direct infringement and that the defendant knowingly induced infringement with the specific intent to encourage another's infringement. *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005). To survive a motion to dismiss, the complaint must (1) adequately plead direct infringement by defendant's customers; (2) contain facts plausibly showing that defendant specifically intended for its customers to infringe the asserted patent; and (3) contain facts plausibly showing that defendant knew that the customer's acts constituted

infringement. *Core Wireless Licensing, S.A.R.L. v. Apple, Inc.,* No. 6:14-cv-752, 2015 WL 4910427, at *3 (E.D. Tex. Aug. 24, 2015) (citing *In re Bill of Lading Transmission and Processing Sys. Patent Litig.,* 681 F.3d 1323, 1339 (Fed. Cir. 2012)). The intent element requires that the defendant "[knows] that the induced acts constitute patent infringement." *Id.* (citing *Global-Tech Appliances, Inc. v. SEB S.A.,* 131 S.Ct. 2060, 2068 (2011)). As this Court has emphasized in *Core Wireless*, the plaintiff need not prove its case at the pleading stage. *Id.*

Contributory infringement under 35 U.S.C. §271(c) occurs if a party sells or offers to sell an apparatus for use in practicing a patented process, and that the apparatus is material to practicing the invention, has no substantial non-infringing uses, and is known by the party to be especially made or especially adapted for use in an infringement of such patent. *Id.* (citing *Bill of Lading,* 681 F.3d at 1337).

> **1. Biosonix Has Sufficiently Stated A Claim Of Induced Infringement Against All Defendants, Including T-H Marine.**

A plain reading of the First Amended Complaint makes clear that the inducement claim was adequately pled against all defendants. Claim 4 of the '395 Patent (an apparatus claim) and claim 13 (a method claim) share many limitations. In the Amended Complaint, Biosonix provides a run-down of the various claim elements and where those claim elements are found in the H2 System. [Dkt. #11, ¶ 27-34]. In this description, excerpts from the H2 System User Manual and the Hydrowave H2 System webpage are provided. The Amended Complaint makes repeated reference to the user of the H2 System using the H2 system as intended according to the features on the face of the product. [Dkt. #11, ¶¶ 28, 32, 36]. In paragraph 52 of the Amended Complaint, Biosonix alleges that

> With this prior knowledge of the '395 Patent, and by way of this Complaint, Defendants intend for their manufacturers, resellers, developers, customers and end users to make, use or sell the H2 System in its normal and customary manner and

know, or is willfully blind, that by doing so these parties will directly infringe one or more of the '395 Patent claims.

In the context of induced infringement, therefore, Biosonix has alleged that the purchasers of the H2 System perform acts sufficient to constitute direct infringement of method claim 13 when using the product in its customary manner.

With respect to T-H Marine's knowledge of the '395 Patent and intent to induce infringement, the various allegations of the Amended Complaint, when viewed in the light most favorable to Biosonix, show that Biosonix has alleged facts that make out a plausible claim that (1) a purchaser of the H2 System has performed acts sufficient to constitute infringement; (2) T-H Marine knew of the patent and that the acts in question would infringe; and (3) T-H Marine had specific intent to encourage the third party's infringement.

T-H Marine argues that instruction materials provided with the accused product, without more, are insufficient to create a reasonable inference of specific intent to induce infringement. But Biosonix does not rely on the H2 System instructions or its standard operation *alone* to establish inducement. Instead, it alleges facts that establish a plausible inference that Defendants possessed the requisite knowledge of the '395 Patent and intent.

In the Amended Complaint Biosonix cites to Hydrowave's website in which Hydrowave touts its products as "the new generation of the Biosonix electronic feeding stimulator". [Dkt. #11, ¶46]. This is a clear indication that Hydrowave copied Biosonix's patented product when it developed its product.

At the same time, as the Amended Complaint spells out, Hydrowave founders Euguene Eisenmann and Robert Palmer knew of the '395 Patent. Eisenman and Palmer are named inventors of U.S. Patent No. 8,792,306 ("the '306 Patent"). During prosecution of the application that issued as the '306 Patent, the '395 Patent, Biosonix's marketing materials, website and a user manual for

Biosonix's RF-300 system were submitted to the USPTO by Eisenmann and Palmer in an Information Disclosure Statement. [Dkt. # 11, ¶42].

Also, as alleged in the Amended Complaint, prior to owning Hydrowave, Kevin VanDam was a paid promoter and consultant of Biosonix, used Biosonix products and knew of Biosonix's patent. [Dkt. # 11, ¶ 18-22, 40-42; Exh. C]. Armed with this knowledge and intent, Eisenmann and VanDam joined forces at Hydrowave and manufactured and sold infringing H2 Systems that Hydrowave advertises are copies of the Biosonix system. Viewing these allegations in the light most favorable to Biosonix, it has more than sufficiently pled claims of indirect infringement.

T-H Marine takes exception to Biosonix "lumping" together all of the defendants and argues that Biosonix has failed to make a connection between them. The defendants, however, are grouped together because the acquisition of Hydrowave by T-H Marine by definition connects them.

According to T-H Marine, it *can't* be liable for indirect infringement or be found to have willfully infringed because it only acquired Hydrowave in November 2015. But the very nature of its acquisition of Hydrowave makes clear why the defendants are grouped in the complaint and in a number of ways makes Biosonix's inducement claim more than plausible.[1]

First, if T-H Marine performed even a modicum of due diligence before acquiring Hydrowave, it would have learned of the '395 Patent and that the H2 System infringes it. T-H Marine would have known of the '395 Patent when it acquired Hydrowave's '306 Patent. Indeed, of the nine prior art references cited on the face of Hydrowave's '306 Patent, **five** are attributable

---

[1] T-H Marine asks the Court to take judicial notice of the Hydrowave acquisition but seems to view the circumstances of the acquisition in the light most favorable to it in arguing that it has no association with Hydrowave's pre-suit knowledge of the '395 Patent or pre-suit infringements. This is improper under Rule 12(b)(6). Regardless of circumstances of the Hydrowave acquisition, Biosonix submits that it has sufficiently stated all claims for relief based on the allegations of the Amended Complaint alone.

**PLAINTIFF BIOSONIX, LLC's RESPONSE TO**
**T-H MARINE SUPPLIES, INC.'S PARTIAL MOTION TO DISMISS -  P. 6**

to Biosonix. In addition, assuming T-H Marine examined the website of the company it purchased, it would have learned of the open and blatant leveraging of the patented Biosonix system. The acquisition only underscores that T-H Marine knew of the '395 Patent and by continuing Hydrowave's activities intends to make and sell products that when used by purchasers in the customary manner infringe the '395 Patent.

Interestingly, in another press release regarding the acquisition cited in T-H Marine's motion, VanDam, a top professional angler, stated that he "has used and believed in T-H Marine products for many, many years and they are literally on my boat from trolling motor to transom." T-H Marine's Huntley reciprocates his admiration, by excitingly announcing that VanDam "one of the top anglers in the world, is maintaining an interest in the brand and staying involved with product development and promotion. We love that KVD believes in us and the HydroWave brand." [Dkt. #18, Exh. 2, p. 3]. As a leading manufacturer, distributor and retailer of marine supplies, it is difficult to imagine that T-H Marine was not aware of VanDam's relationship with Biosonix and Biosonix's patented technology, which just a few years ago was sold in Bass Pro Shops and featured in publications in T-H Marine's industry. [Dkt. #11, Exh. B & C].

Second, as part of T-H Marine's acquisition of Hydrowave, Eisenmann and VanDam will spearhead T-H Marine's efforts to expand the Hydrowave brand and product line. [Dkt. #18, Exh. B, p. 2-3]. Eisenmann and VanDam, therefore, are agents of T-H Marine in terms of development, promotion and sale of the H2 System. As such, Eisenmann's and VanDam's knowledge of the '395 Patent and intent to induce infringement may be imputed to T-H Marine.

Third, T-H Marine acquisition is at least a continuation of Hydrowave and thus T-H Marine may be liable for Hydrowave's pre-suit acts of infringement. As discussed above, T-H Marine has moved all Hydrowave manufacturing operations to T-H Marine headquarters in Huntsville,

Alabama, including Hydrowave's employees. VanDam and Eisenmann have been retained by T-H Marine to continue development, promotion and expansion of Hydrowave products and brand. The two registered Hydrowave trademarks (Reg. Nos. 4214124 and 4214125) were assigned to T-H Marine on or about November 30, 2015 and counsel of record here for T-H Marine recorded those assignments with the USPTO. Hydrowave's '306 Patent was assigned to T-H Marine on the same day.[2]

Regardless of whether T-H Marine and Hydrowave label their transaction as "an acquisition", "an acquisition of assets", or otherwise, it is hard to imagine that there is anything of value or otherwise left of Hydrowave, LLC. As Hydrowave's successor, T-H Marine assumes Hydrowave's rights and obligations, including liability for the indirect and willful infringement of the '395 Patent. *See Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.,* 616 F.3d 1357 (Fed. Cir. 2010) (applying successor liability principles to patent infringement claims). For these reasons, Biosonix correctly claims that all defendants are liable for indirect and willful infringement.

Based on the facts alleged in the Amended Complaint, when viewed in the light most favorable to the plaintiff, Biosonix has stated a claim of induced infringement against all defendants, including T-H Marine.

### 2. Biosonix Has Sufficiently Stated A Claim Of Contributory Infringement Against All Defendants, Including T-H Marine.

As discussed above with respect to inducement, as the Amended Complaint spells out, there is direct infringement of the '395 Patent by purchasers and users of the H2 System in the ordinary course. In addition, the Hydrowave Expansion Modules contain sounds that may be plugged into the H2 System and are specially made for use with the H2 System. [Dkt. #11, ¶30,

---

[2] The recording of the assignments of Hydrowave's '306 Patent and two registered trademarks to T-H Marine are viewable on the USPTO's patent and trademark assignment databases.

35, 36, 38, 39]. When installed in the H2 System's expansion port [Dkt. #11, ¶30] and used with the H2 System, the components collectively are infringing. [Dkt. #11, ¶35, 36, 38, 39].

As alleged in the Count, the H2 expansion modules are distinct and separate components manufactured and sold by Defendants with knowledge that the expansion cards in combination with the H2 System infringes the '395 Patent and Defendants, collectively, are aware of the infringement. Furthermore, as discussed above, Defendants have knowledge of the '395 Patent and knew that the components are especially made, were patented and infringing. As with the H2 System as a whole, the Biosonix system that Hydrowave copied included expansion cards, such as a KVD (Kevin VanDam) card. [Dkt. #11, ¶20]. The Amended Complaint also alleges that that these components (the H2 System and expansion cards) are especially made or especially adapted to practice the inventions claimed in the '395 Patent, have no substantial non-infringing use, and are not a staple article or commodities of commerce because they are specifically designed to practice the inventions claimed in the '395 Patent. [Dkt. #11, ¶35, 52-55].

Biosonix submits that it has adequately stated a claim for contributory infringement of the '395 Patent against all defendants, including T-H Marine, based on their manufacture and sale of the various components of the H2 System, including the Hydrowave Expansion Modules.

### 3. Biosonix Has Adequately Pled Willful Infringement Against All Defendants.

T-H Marine argues that Biosonix has alleged no facts from which T-H Marine can be found to have willfully infringed the '395 Patent before the filing of this suit. Only a good faith basis for alleging willful infringement is necessary. *Core Wireless,* 2015 WL 4910427, *10 (citing *In re Seagate Tech., LLC,* 497 F.3d 1360, 1374 (Fed. Cir. 2007)). A party must show an "objectively high likelihood" that the defendant's acts constituted infringement and that the

"objectively defined risk was… either known or so obvious that it should have been known to the accused infringer." *Id.*

T-H Marine's pre-suit infringing sales were willful for three reasons.  First, T-H Marine's acquisition of Hydrowave makes it liable for the acts of Hydrowave, including Hydrowave's willfully infringing pre-suit sales of H2 Systems.[3]  Second, by virtue of T-H Marine retaining VanDam and Eisenmann as its agents to develop and promote Hydrowave products, their knowledge and intent to make and sell an infringing product are imputed to T-H Marine.  Third, T-H Marine's own independent knowledge of the '395 Patent and the manufacture and sale of the infringing H2 System based at least on information on the face of its own '306 Patent and its target company's website.   The allegations, when viewed in the light most favorably to Biosonix, state a claim that all defendants are liable as willful infringers for pre-suit sales of the accused products. T-H Marine, like Hydrowave and RHP, has manufactured or sold H2 Systems despite an objectively high likelihood that its actions constituted infringement and that the risk was known or so obvious that it should have been known by the defendants.

The crux of T-H Marine's motion is that should in no way be linked to the other defendants because it only recently started selling infringing products. Contrary to T-H Marine's assertions, this is not a case of a "big box" retailer selling infringing products of a manufacturer with which it has no relationship.  T-H Marine purchased Hydrowave.  It manufactures and sells Hydrowave's products. It bought Hydrowave's patent and trademarks.  It moved Hydrowave's employees and all operations to Alabama.  It retained as developers and promoters of the accused products two Hydrowave owners intimately familiar with Biosonix, Biosonix's products and the

---

[3] Hydrowave does not challenge the sufficiency of Biosonix's willful infringement claims against it in its Partial Motion to Dismiss.

**PLAINTIFF BIOSONIX, LLC's RESPONSE TO**
**T-H MARINE SUPPLIES, INC.'S PARTIAL MOTION TO DISMISS -  P. 10**

'395 Patent.  One was a paid promoter of Biosonix's patented technology.  Despite all of this, T-H Marine insists that it in no way should be included with the other defendants in terms of infringement occurring prior to this action.

T-H Marine's arguments notwithstanding, when the alleged facts are viewed in the light most favorable to the plaintiff, Biosonix has sufficiently stated a claim against all Defendants, including T-H Marine, for direct infringement of claim 13 of the '395 Patent, induced infringement, contributory infringement and willful pre-suit infringement.

## CONCLUSION

Based on the foregoing, Plaintiff Biosonix, LLC respectfully submits that T-H Marine Supplies, Inc.'s Partial Motion to Dismiss Biosonix's Amended Complaint should be denied.  In the alternative, should the motion be granted Biosonix respectfully requests that it be without prejudice and that the Court grant Biosonix leave to amend its complaint.

Dated: June 10, 2016               Respectfully submitted,

/s/ *Gregory Perrone*
Gregory Perrone
Texas Bar No. 24048053
perrone@bhp-ip.com
Bobby W. Braxton
Texas Bar. No. 24059484
braxton@bhp-ip.com

**BRAXTON, HILTON & PERRONE, PLLC**
4975 Preston Park Blvd., Suite 490
Plano, Texas 75093
Phone: (469) 814-0028
Fax: (469) 814-0023

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system this 10th day of June, 2016.

                                                 */s/Gregory Perrone*
                                                  Gregory Perrone